UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

RICHARD R. ARCHULETA,

Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,[1]

Defendant.

Case No. C16-5275-RAJ

**ORDER REVERSING AND REMANDING CASE FOR FURTHER ADMINISTRATIVE PROCEEDINGS**

Richard Archuleta seeks review of the denial of his applications for Supplemental Security Income and Disability Insurance Benefits. Mr. Archuleta contends the ALJ erred in (1) concluding his impairments did not equal any of the Medical Listings; (2) evaluating the medical evidence; (3) rejecting his own testimony; (4) finding he could return to his past work or, alternatively, that he could perform other work existing in the national economy. Dkt. 9 at 1-2. Mr. Archulta contends this case should be remanded for a finding of disability and an award of benefits. Dkt. 9 at 2. As discussed below, the Court **REVERSES** the Commissioner's final decision and **REMANDS** the matter for further administrative proceedings under sentence four

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. The Clerk is directed to update the docket, and all future filings by the parties should reflect this change.

of 42 U.S.C. § 405(g).

## BACKGROUND

On January 23, 2012, Mr. Archuleta applied for benefits, alleging disability as of September 18, 2010. Tr. 188-97. Mr. Archuleta's applications were denied initially and on reconsideration. Tr. 71-110, 115-32, 410. After conducting a hearing on January 28, 2013, the ALJ issued a decision on February 15, 2013, finding Mr. Archuleta not disabled. Tr. 27-42, 44-70. The Appeals Council denied Mr. Archuleta's request for review and Mr. Archuleta subsequently sought judicial review. Tr. 1-6. By order dated January 12, 2015, the district court reversed and remanded the case for further administrative proceedings. Tr. 533-541. The ALJ conducted a second hearing on October 19, 2015, and on February 3, 2016, issued a decision again finding Mr. Archuleta not disabled. Tr. 410-23, 432-91.

## THE ALJ'S DECISION

Utilizing the five-step disability evaluation process,[2] the ALJ found:

**Step one:** Mr. Archuleta has not engaged in substantial gainful activity since September 18, 2010, the alleged onset date.

**Step two:** Mr. Archuleta has the following severe impairments: unilateral vestibulopathy, acromioclavicular joint arthritis, chronic biceps rupture, and status post rotator cuff repair.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[3]

**Residual Functional Capacity:** Mr. Archuleta can perform a range of light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except he can occasionally climb ramps and scaffolds, and never climb ladders, ropes or scaffolds. He can occasionally balance,

---

[2] 20 C.F.R. §§ 404.1520, 416.920.

[3] 20 C.F.R. Part 404, Subpart P. Appendix 1.

stoop, kneel, crouch and crawl. He can occasionally reach overhead with the left upper extremity. He must avoid all exposure to unprotected heights.

**Step four:** Mr. Archuleta can perform past relevant work as a cashier II and, as such, is not disabled.

**Step five:** Alternatively, as there are jobs that exist in significant numbers in the national economy that Mr. Archuleta can perform, he is not disabled.

Tr. 410-23. Mr. Archuleta now seeks judicial review of the ALJ's February 3, 2016 decision finding him not disabled. Dkt. 3.[4]

## DISCUSSION

### A. Medical Evidence

Mr. Archuleta contends the ALJ erred in weighing the medical opinion evidence. Dkt. 9 at 8-13. Specifically, Mr. Archuleta contends the ALJ erred in rejecting the opinions of treating and examining physicians Larry G. Duckert, M.D., Ph.D. and Maciej Mrugala, M.D., and relying on the opinion of non-examining medical expert Peter R. DeMarco, M.D. Dkt. 9.

In general, more weight should be given to the opinion of a treating physician than to a non-treating physician, and more weight to the opinion of an examining physician than to a nonexamining physician. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where a treating or examining doctor's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons. *Id.* Where contradicted, a treating or examining physician's opinion may not be rejected without "specific and legitimate reasons supported by substantial evidence in the record for so doing." *Id.* at 830-31. "An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'"

[4] The rest of the procedural history is not relevant to the outcome of the case and is thus omitted.

*Garrison v. Colvin*, 759 F.3d 995, 1011 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The contrary opinion of a non-examining medical expert alone does not constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion[.]" *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Rather, a non-examining opinion may constitute substantial evidence only "when it is consistent with other independent evidence in the record." *Id.*

***1. Dr. Duckert's 2012 Opinion***

Mr. Archuleta contends the ALJ erred in rejecting Dr. Duckert's 2012 opinion. The Court disagrees.

In 2012, otolaryngologist Dr. Duckert examined Mr. Archuleta and noted that he "described an event in June 2010, which was characterized by whirling disabling vertigo" and that he has had "a residual disequilibrium since along with a collection of other symptoms which are more difficult to describe." Tr. 336. Dr. Duckert performed extensive vestibular testing which he found demonstrated "an absent response to caloric stimulus of the left ear" and concluded that Mr. Archuleta had "a significant left peripheral vestibulopathy responsible for his symptoms." *Id.* Dr. Duckert opined that Mr. Archuleta was able to sit for prolonged periods with occasional pushing and pulling of arm or leg controls, could sit for most of the day, walk or stand for brief periods, could lift a maximum of 50 pounds and frequently lift or carry 25 pounds and that participation in a rehabilitation program was appropriate at the time. Tr. 400-01. Dr. Duckert further opined that Mr. Archuleta's work function was impaired by a medically determinable physical impairment and that his condition was expected to impair work function for three months. *Id.*

The ALJ reasonably rejected this opinion on the grounds that it was time-limited. Tr.

420. Temporary limitations are insufficient to meet the durational requirement for a finding of disability. *See* 20 C.F.R. 416.905(a) (claimant must have an impairment expected to last for a continuous period of not less than 12 months); 42 U.S.C. 423(d)(1)(A) (disability means inability to perform work by reason of an impairment that can be expected to last for a continuous period of not less than 12 months); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1165 (9th Cir. 2008) (affirming ALJ's finding that treating physicians' short term excuse from work was not indicative of "claimant's long term functioning"); *Figueroa v. Colvin*, 2016 WL 5349453 (E.D. Wash. Sept. 23, 2016) (temporary limitations not sufficient to meet durational requirement for finding of disability); *O'Brian v. Colvin*, 2015 WL 999904 *7 (W.D. Wash., February 13, 2015) (ALJ reasonably rejected nurse practitioner opinion on grounds "the impairment was expected to impair work for only six months"). Here, Dr. Duckert's opinion specifically indicates that Mr. Archuleta's impairments are only expected to impair work function for three months. Tr. 400-01. Accordingly, this was a specific and legitimate reason to reject Dr. Duckert's 2012 opinion.

***2. Dr. DeMarco's Nonexamining Opinion, Dr. Duckert's 2014 Treatment Note, and Dr. Duckert's 2015 Post-Hearing Statement***

Mr. Archuleta contends the ALJ erred in discounting Dr. Duckert's 2015 post-hearing statement and giving great weight to Dr. DeMarco's nonexamining opinion. Dkt. 9 at 8-9. Specifically, Mr. Archuleta contends that Dr. DeMarco based his opinion, in part, on a 2014 treatment note by Dr. Duckert and that Dr. Duckert's 2015 statement undermines Dr. DeMarco's interpretation of that treatment note. *Id.* The Court agrees.

In May 2014, Dr. Duckert examined Mr. Archuleta again due to continued complaints of balance disturbance as well as other symptoms he felt "could implicate a migraine-type

dizziness." Tr. 684. Dr. Duckert performed another round of vestibular testing and found that, "once again a unilateral vestibular deficit has been documented which remains uncompensated." *Id.* However, Dr. Duckert further opined that,

> The other finding that I think is quite compelling and clinically significant in [sic] his posturography. In this case, the data would document a complete somatosensory dissociation. These findings would define level of disability in excess of what one might anticipate given the objective data documented on the other subtests. In my opinion, this would implicate a significant nonorganic functional component to his clinical picture. This would probably account for why he has failed to respond to the physical therapy program in the past. … in my opinion this calls into question the patient's credibility and will explain why our rehabilitation efforts have been challenged.

*Id.*

Dr. DeMarco testified at the October 2015 hearing that Mr. Archuleta's vestibular test results do show an abnormality within the vestibular part of the labyrinth. Tr. 438-39. However, Dr. DeMarco went on to opine that individuals may fail vestibular testing and still have minimal physical findings. *Id.* Dr. DeMarco indicated that he did not find Mr. Archuleta's symptoms such as "tipping to the left, listing to the left, falling, feeling he is nauseous and going to throw up" consistent based on the testing results alone. Tr. 449. Dr. DeMarco indicated that the only limitation he could definitively assess was that Mr. Archuleta should not work around heights but also acknowledged that he could not "comment on what [Mr. Archuleta] does in terms of day-to-day activity, not having observed him." Tr. 438-39, 443. Dr. DeMarco goes on to testify that he does not find Mr. Archuleta's alleged symptoms consistent with the nature of his impairment for four reasons: (1) Dr. Duckert's 2014 treatment note indicated a "significant non-organic functional component to his clinical picture" which Dr. DeMarco interpreted as questioning whether Mr. Archuleta was "faking it"; (2) individuals with this impairment almost always respond to physical therapy which Mr. Archuleta did not; (3) individuals with ongoing

significant symptoms almost always have significant hearing loss which Mr. Archuleta did not; and (4) he would have expected someone with such significant symptoms to have documented specific findings during an acute attack, such as in an emergency room. Tr. 441, 442, 449, 451.

In November 2015, Dr. Duckert submitted a post-hearing statement in which he responded to questions posed by Mr. Archuleta's attorney. Tr. 1558-60. Specifically, when asked what he meant by a "nonorganic functional component" in his May 2014 treatment note, Dr. Duckert responded "emotional or psychiatric." Tr. 1558. When asked whether a non-organic functional component could refer to psychological factors or psychological overlay and whether it did in this case, Dr. Ducker responded "no." *Id.* When asked whether Mr. Archuleta's vestibular symptoms and findings had a neurological or other cause, Dr. Duckert responded that "Mr. Archuleta's symptoms are secondary to a combined peripheral /central vestibular abnormality unequivocally." Tr. 1559. When asked whether Dr. Duckert thought it was possible to intentionally exaggerate or falsify the results of vestibular testing given Mr. Archuleta's documented vestibular complaints and that he has had "two rounds of vestibular testing over two years" Dr. Duckert responded "no, only one of the tests implicates patient bias." *Id.* When asked whether he had any reason to believe Mr. Archuleta was intentionally falsifying his test results or malingering, Dr. Duckert responded that "the platform test on 5/1/14 is suspect." *Id.* Finally, Mr. Archuleta's counsel asked whether, in Dr. Duckert's opinion, Mr. Archuleta suffered from balance disturbance with disturbed function of the vestibular labyrinth demonstrated by caloric or other vestibular tests, as defined by the Social Security Administration" as:

> How do we evaluate vertigo with disturbances of labyrinthine-vestibular function, including Menier's disease? 1. These disturbances of balance are characterized by an hallucination of motion or loss of position sense and a sensation of dizziness which may be constant or may occur in

> paroxysmal attacks. Nausea, vomiting, ataxia, and incapacitation are frequently observed, particularly during the acute attack.

Tr. 1560. Dr. Duckert responded affirmatively. *Id.*

The ALJ gave "great weight" to Dr. DeMarco's opinion and "limited weight" to Dr. Duckert's 2015 opinion. However, the ALJ does not appear to reject any portion of Dr. Duckert's 2015 opinion. Tr. 421. Instead, the ALJ finds that Dr. Duckert's statement that the claimant has symptoms secondary to a vestibular abnormality "does not undercut Dr. DeMarco's testimony." *Id.* The ALJ notes that Dr. DeMarco readily agreed the claimant had an abnormality of the vestibular system identified on testing but that "[t]he issue is the severity of the claimant's symptoms and the degree of functional limitations." *Id.* Moreover, the ALJ notes that Dr. DeMarco "provided a careful analysis in support of his opinion that the symptoms are not as severe as reported by the claimant." *Id.*

Contrary to the ALJ's finding, Dr. Duckert's 2015 post-hearing opinion does undermine Dr. DeMarco's nonexamining opinion in several ways. First, Dr. DeMarco opined that symptoms such as "tipping to the left, listing to the left, falling … and feeling that he is nauseous and going to throw up" were not consistent with Mr. Archuleta's vestibular test results alone because "he has not sustained any hearing change." Tr. 449. However, Dr. Duckert clearly opined that Mr. Archuleta had symptoms "secondary to a combined peripheral and central vestibular abnormality unequivocally" and that these symptoms included disturbances of balance "characterized by hallucination of motion or loss of position sense and a sensation of dizziness which may be constant or may occur in paroxysmal attacks …[and that] nausea, vomiting, ataxia and incapacitation are frequently observed, particularly during the acute attack." Tr. 1558-60. The ALJ finds Dr. Duckert's opinion does not undermine Dr. DeMarco's opinion because the issue is the *severity* of symptoms. Tr. 421. However, Dr. DeMarco's opinion appears to indicate

that these *types* of symptoms (e.g. nausea, vomiting, hallucination of motion) are not consistent while Dr. Duckert's opinion appears to indicate that these symptoms are, in fact, consistent and that Mr. Archuleta experiences these symptoms.

Second, although Dr. Duckert states that "the platform test on 5/1/14 is suspect" he also states that he "does not believe it was possible to intentionally exaggerate or falsify the results of vestibular testing." Tr. 1559. This statement renders the proper interpretation of Dr. Duckert's May 2014 treatment note and 5/1/2014 platform test ambiguous and draws into question whether Dr. DeMarco reasonably interpreted this note as indicative of symptom exaggeration or malingering. Moreover, Dr. DeMarco's own opinion is also equivocal indicating both that the only limitation he could definitively assess is that Mr. Archuleta should not work around heights but also acknowledging that he could not "comment on what [Mr. Archuleta] does in terms of day-to-day activity, not having observed him." Tr. 438-39, 443. The ALJ has a duty to develop the record where it is ambiguous or inadequate to allow for proper evaluation of the evidence. *See Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) (duty to further develop record triggered when there is ambiguous evidence or record is inadequate to allow for proper evaluation of evidence); 20 C.F.R. § 416.912(e)(1). The issue of symptom exaggeration or malingering is a pivotal issue in this case as it is central to the ALJ's evaluation of the medical evidence and Mr. Archuleta's credibility. Accordingly, on remand, the ALJ should develop the record as necessary to clarify and reevalute Dr. Duckert's 2015 statement as well as Dr. DeMarco's opinion.[5]

---

[5] The Commissioner argues the ALJ properly rejected Dr. Duckert's 2015 statement as inconsistent with the record evidence, including the opinion of Dr. DeMarco. Dkt. 11 at 15. However, the ALJ did not, in fact, discount Dr. Duckert's statement on this basis. Tr. 421. Moreover, Dr. Duckert's treating opinion, particularly the interpretation of his own treatment note, would typically be entitled to greater weight than Dr. DeMarco's nonexamining opinion.

***3. Dr. Mrugala***

In November 2015, Dr. Mrugala completed an assessment of functioning form in which he indicated Mr. Archuleta was diagnosed with chronic dizziness, unsteady gait, chronic headaches, and intermittent left sided paresthesias. Tr. 1561-66. Dr. Mrugala opined that Mr. Archuleta was limited to less than sedentary work due to his mobility issues, use of crutches and chronic dizziness. Tr. 1561. Dr. Mrugala further indicated that "given frequent falls" an assistive device is needed and that he had recently prescribed a walker for Mr. Archuleta. Tr. 1562. Dr. Mrugala also indicated that he did not have a basis to suspect Mr. Archuleta was malingering. Tr. 1564. Given Mr. Archuleta's symptoms Dr. Mrugala indicated he did not think work that required lifting and carrying would be suitable, that Mr. Archuleta should not perform work around hazards, that he would not be able to maintain an average work pace and that is work pace would be expected to be significantly slower. Tr. 1562. Dr. Mrugala estimated that Mr. Archuleta would need to take breaks every two to three hours and indicated that he would expect him to be absent from full-time work twice a month or more due to his impairments. Tr. 1562-63. Finally, when asked whether Mr. Archuleta had been unable to ambulate effectively, as defined in listing 1.00(B)(2) for the past 12 months and whether his ability to ambulate was expected to return in the next 12 months Dr. Mrugala responded "yes." Tr. 1565; 20 C.F.R. Part 404, Subpt. P. App. 1, § 1.00(B)(2).

The ALJ gave little weight to Dr. Mrugala's opinion on the grounds that (1) Mr. Archuleta's "use of crutches related to dizziness is not medically established" according to Dr. DeMarco, (2) Dr. Mrugala's own records do not document inability to ambulate effectively in the prior 12 months, and (3) "to the extent Dr. Mrugala relied on the claimant's allegation of

---

*See Lester*, 81 F.3d at 830.

symptoms that lack credibility, his opinion is discounted." Tr. 421. None of these reasons is sufficient.

First, to the extent the ALJ rejects Dr. Mrugala's treating opinion as inconsistent with the nonexamining opinion of Dr. DeMarco this reason fails. As discussed above, the record must be developed and Dr. DeMarco's opinion must be reevaluated on remand along with Dr. Duckert's 2015 statement. Accordingly, this was not a sufficient reason to reject Dr. Mrugala's opinion.

Second the ALJ improperly rejected Dr. Mrugala's opinion on the grounds that his own records did not document the inability to ambulate effectively in the prior12 months. Tr. 421. Inconsistency between a treating physician's opinion and his own treatment notes may be a specific and legitimate reason to reject that opinion. *See Ghanim v. Colvin*, 763 F.3d at 1161. Here, the ALJ points to an April 2015 treatment note in which Dr. Mrugala found Mr. Archuleta was able to ambulate without crutches although with a "slightly wide base" and that he was unable to tandem walk. Tr. 421, 1065. The ALJ also points to another provider's treatment note that same month which described Mr. Archuleta's gait as non-ataxic and not broad-based, and indicated he was able to heel-and-toe walk normally. Tr. 421, 741. However, these findings do not substantially undermine Dr. Mrugala's opinion that Mr. Archuleta had been unable to "ambulate effectively" in the prior 12 months. The ability to "ambulate effectively" is described in listing 1.00(B) (and in Dr. Mrugala's statement) as,

> [I]ndividuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single

> hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Tr. 1566; 20 C.F.R. Part 404, Subpt. P. App. 1, § 1.00(B). In his testimony Mr. Archuleta himself acknowledged that he was capable of walking without crutches a short distance in his living room but that he always used them when he went outside for balance and to prevent falls. Tr. 462-63. Moreover, as Mr. Archuleta notes, the record as a whole shows that while on some occasions his ability to ambulate was better than others, he was frequently noted to have a wide based gait, was unable to tandem walk and had positive Romberg tests. Tr. 360-62, 1099, 1554. Dr. Mrugala himself noted during the 2015 examination that he observed Mr. Archuleta's gait to be "definitely ataxic," that he walked "with crutches with a wide base" and was "unable to tandem walk." Tr. 1554. Moreover, several of Dr. Mrugala's other treatment notes indicate that, although on some occasions Mr. Archuleta's ability to ambulate was less impaired than others, that he still used crutches for safety. Tr. 1069, 1073. Under the circumstances, Mr. Archuleta's ability to walk without crutches a short distance in a medical office on a few occasions, without more, does not directly undermine Dr. Mrugala's opinion that he has been unable to ambulate effectively in the prior 12 months. Accordingly, substantial evidence does not support the ALJ's rejection of Dr. Mrugala's opinion on this basis.

Finally, the ALJ states that "to the extent Dr. Mrugala relied on the claimant's allegation of symptoms that lack credibility, his opinion is discounted." Tr. 421. "If a treating provider's opinions are based 'to a large extent' on an applicant's self-reports and not on clinical evidence, and the ALJ finds the applicant not credible, the ALJ may discount the treating provider's opinion." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014). However, here the ALJ does not affirmatively find that Dr. Mrugala relied to a large extent on Mr. Archuleta's self-reported

symptoms and his conclusory rejection of the opinion "to the extent" it relies on Mr. Archuleta's self-reported symptoms does not meet the level of specificity our case law requires. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (conclusory reasons are insufficient and do "not achieve the level of specificity" required to justify rejecting a treating opinion). Furthermore, "when the opinion is not more heavily based on a patient's self-reports than on clinical observations, there is no evidentiary basis for rejecting the opinion." *Ghanim*, 763 F.3d at 1162. Here Dr. Mrugala examined Mr. Archuleta on multiple occasions and on his most recent physical examination personally observed Mr. Archuleta's gait to be ataxic, that he walked with crutches with a wide base and was unable to tandem walk. Tr. 1554. Without further explanation the Court cannot conclude that Dr. Mrugala relied more heavily on Mr. Archuleta's self-reports than on his clinical observations. Additionally, as discussed below, in this case the ALJ failed to give sufficient reasons for discounting Mr. Archuleta's subjective symptom testimony. Accordingly, the ALJ erred in rejecting Dr. Mrugala's opinion on this basis.

On remand the ALJ should reevaluate Dr. Mrugala's opinion.

**B. Mr. Archuleta's Testimony**

Mr. Archuleta contends the ALJ erred in discounting his testimony. The Court agrees.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." *Lester*, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.; see also Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993). If a claimant presents objective medical evidence of an underlying impairment and there is no evidence of malingering, "'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter v. Astrue*, 504 F.3d 1028,

1036 (9th Cir. 2007) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996)).

The ALJ discounted Mr. Archuleta's testimony, in part, based on evidence of symptom exaggeration. Tr. 418-19. Evidence of symptom exaggeration may be a valid basis for discounting a claimant's subjective symptom testimony. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (holding an adverse credibility determination based, in part, evidence of the claimant's tendency to exaggerate). However, here, substantial evidence does not support this finding. As noted above, although Dr. DeMarco's opinion and Dr. Duckert's 2014 treatment note do raise the question of potential symptom exaggeration, Dr. Duckert's 2015 statement renders that evidence ambiguous to an extent that must be clarified on remand. Accordingly, under the circumstances, substantial evidence does not support rejecting Mr. Archuleta's testimony on that basis.

The ALJ also discounted Mr. Archuleta's testimony based on "inconsistencies" in the treatment record regarding Mr. Archuleta's ability to ambulate, his use of crutches as well as with respect to his reports of visual disturbances and vertigo. Tr. 418-19. An ALJ may discredit a claimant's testimony when it is inconsistent with medical evidence. *See Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly discounted claimant's testimony based on contradictions between that testimony and the relevant medical evidence). Here the ALJ observed that in May 2014, Dr. Ma noted the Mr. Archuleta had a normal gait and was able to toe walk and heel walk. Tr. 419, 1085. He further notes that in April 2015 Dr. Mrugala found that although Mr. Archuleta had a wide-based gait he was able to ambulate without crutches and that treatment notes from other providers in April 2015 indicate that Mr. Archuleta was able to ambulate without crutches and was capable of tandem walking. Tr. 419, 741, 1065. It does appear from the record that Mr. Archuleta reported and exhibited greater difficulty with

ambulation at some times than at others. However, the ALJ fails to identify or explain how the fluctuation in Mr. Archuleta's ambulatory ability is inconsistent with Mr. Archuleta's testimony. *See Lester*, 81 F.3d at 834 (the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints."). The Court agrees with Mr. Archuleta that, overall, the record shows he consistently reported symptoms of dizziness, episodes of vertigo, falling, nystagmus, and that, on many occasions, he was observed as unable to tandem walk, and had a positive Romberg tests. *See, e.g.*, Tr. 275, 313, 360-62, 364, 686, 138-89, 1392, 1410, 1414, 1418, 1423, 1451-52, 1454, 1461-62, 1484, 1492, 1554. Moreover, Dr. Duckert's 2015 statement appears to confirm that Mr. Archuleta's vestibular impairment causes disturbances of balance "characterized by an hallucination of motion or loss of position sense and a sensation of dizziness which *may be constant or may occur in paroxysmal attacks*. Nausea, vomiting, ataxia, and incapacitation are frequently observed, *particularly during the acute attack*." Tr. 1560 (emphasis added). Thus, it does not appear that a fluctuation of symptoms related to balance disturbance is necessarily inconsistent with the nature of Mr. Archuleta's impairment, nor does the ALJ identify any specific inconsistency with Mr. Archuleta's testimony. *See Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001) ("the ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony); *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (finding legal error where "the ALJ failed to identify the testimony she found not credible, she did not link that testimony to the particular parts of the record supporting her non-credibility determination.").

The ALJ also notes that the treatment records related to Mr. Archuleta's shoulder surgery make no mention of his complaints of vertigo, other than one mention to a provider that he did not follow through with physical therapy because of vertigo. Tr. 419. However, it is unclear

how this finding undermines Mr. Archuleta's testimony since his reason for visiting the surgeon was to repair his injured shoulder not to address his vertigo. The ALJ also notes that the ophthalmologist did not find any ophthalmologic reason for Mr. Archuleta's nystagmus and equilibrium problems. Tr. 419. However, several of Mr. Archuleta's providers observed nystagmus on examination and Dr. Duckert identified Mr. Archuleta's vestibular impairment as the cause of his symptoms, including balance disturbance. Tr. 338, 986, 1004, 1042, 1088, 1091, 1329, 1558-60. As such, it is also unclear how the ophthalmologist's failure to find an ophthalmologic reason for Mr. Archuleta's symptoms undermines his testimony. The ALJ also notes that Mr. Archuleta did not report distorted vision to Dr. Mrugala on his 2015 visit. However, Mr. Archuleta reported distorted vision consistently throughout the record and the fact that he did not specifically report it on one visit to a provider does not substantially undermine his testimony. *See, e.g.*, Tr. 337, 285, 319, 364-65, 658, 662, 668, 686, 688, 744, 747, 761, 785, 811, 815, 831, 1062, 1091.

Finally, the ALJ discounted Mr. Archuleta's testimony based on his failure to exercise. An ALJ may consider a failure to follow a prescribed course of treatment when weighing a claimant's credibility. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1039–40 (9th Cir. 2008). The ALJ must consider a claimant's reasons for failing to adhere to recommended treatment before making an adverse credibility finding. *See Smolen*, 80 F.3d at 1284. An ALJ may discount a claimant's credibility due to an "*unexplained or inadequately explained*" failure to follow a prescribed course of treatment." *Tommasetti*, 533 F.3d at 1039. Where a claimant provides evidence of a good reason for failing to comply with treatment his symptom testimony cannot be rejected for not doing so. *See Smolen*, 80 F.3d at 1284. Here, when asked by the ALJ, Mr. Archuleta indicated that, in addition to his other symptoms, he had experienced medical issues

related to his feet, including a surgery that had prevented him from engaging in exercise consistently. Tr. 474-76. The ALJ fails to address this explanation in discounting Mr. Archuleta's testimony. Accordingly, substantial evidence does not support this reason for discounting Mr. Archuleta's testimony.

Accordingly, on remand, the ALJ should also reevaluate Mr. Archuleta's testimony.

**C. Step Three**

Mr. Archuleta contends that ALJ erred in failing to perform an adequate medical equivalence assessment for Listings 2.07, 11.03, 1.03 and 1.06. Dkt. 9 at 4-8. The Court disagrees.

At step three of the evaluation process, the ALJ must determine whether a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the Listing. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d). "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment. A boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do so." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir.2001) (citing *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990)). However, "[a]n ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir.2005). The claimant must offer some plausible theory as to how his combined impairments are medically equal to a listed impairment. *Id.*

Here, Mr. Archuleta's counsel presented no argument at the hearing that Mr. Archuleta's impairments medically equaled Listings 2.07, 11.03, 1.03 and 1.06. Tr. 484-91.[6] Accordingly,

[6] Counsel appears to have made a conclusory statement to the Appeals Council that her

as Mr. Archuleta failed to offer a plausible argument of equivalency, the Court cannot conclude the ALJ erred in failing to perform an adequate equivalency analysis. However, as discussed above, this matter must be remanded for the ALJ to reevaluate the medical evidence. Accordingly, Mr. Archuleta is free to raise or not to raise these or other equivalency arguments to the ALJ on remand.

**D. Scope of Remand**

In general, the Court has "discretion to remand for further proceedings or to award benefits." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990). The Court may remand for further proceedings if enhancement of the record would be useful. *See Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 1990). The Court may remand for benefits where (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ fails to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). "Where there is conflicting evidence, and not all essential factual issues have been resolved, a remand for an award of benefits is inappropriate." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014).

Here, there is conflicting and ambiguous evidence in the record that must be developed and reevaluated on remand. Moreover, it is not clear that the ALJ would be required to find Mr. Archuleta disabled if the medical opinion evidence and Mr. Archuleta's testimony were properly

---

impairments equaled Listing 2.07 in seeking review of the ALJ's 2013 opinion. Tr. 273. However, no plausible argument was presented in support of that statement. *Id.* In reply Mr. Archuleta contends he advanced the argument that his vestibular disorder equaled Listing 2.07, and presented evidence supporting his argument at the hearing level. Dkt. 13 at 2. However, in reviewing the hearing testimony the Court is unable to locate such an argument.

considered. Because the record does not compel a finding of disability, the Court finds it appropriate to remand this case for further administrative proceedings. *See Treichler*, 775 F.3d at 1107.

**CONCLUSION**

For the foregoing reasons, the Commissioner's final decision is **REVERSED** and this case is **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

On remand, the ALJ should develop the record as necessary, reevaluate the opinions of Dr. Mrugala, Dr. DeMarco and the 2015 statement from Dr. Duckert, reevaluate Mr. Archuleta's testimony, address any arguments Mr. Archuleta may raise about equivalency at step three and proceed with steps four and five with the assistance of a vocational expert if necessary.

DATED this 31st day of January, 2017.

The Honorable Richard A. Jones
United States District Judge